UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x

VALJEAN BROOKSHAW,                                                    x

                            Plaintiff,                    x

                      -against-                    x

THE CITY OF NEW YORK, a municipal entity;                            x
MICHAEL BLOOMBERG, Mayor of the City of New                          x
York; RAYMOND KELLY, New York City Police                            x
Commissioner; MICHAEL BLOOMBERG, Mayor of                            x
the City of New York; RAYMOND KELLY, New                             x
York City Police Commissioner; STEPHEN                               x
HAMMERMAN, Deputy Commissioner for Legal                             x
Matters; THOMAS DOEPFNER, Assistant Deputy                           x
Commissioner for Legal Matters, NYPD Special Counsel                 x
RUBY MARIN-JORDAN, New York City Police                              x
Department; JOSEPH ESPOSITO, Chief of                                x
Department, New York City Police Department;                         x
THOMAS GRAHAM; Commander, Disorders Control                          x
Unit, New York City Police Department; JOHN J.                       x
COLGAN, Assistant Chief and Commanding Officer,                      x
Pier 57;  MICHAEL SCAGNELLI, Assistant                               x
Chief;  NYPD Captain LORENZO JOHNSON; NYPD                           x
Inspector JAMES MCCARTHY; TIMOTHY KRAFT,                             x
New York City Police Officer, Shield No. 11989; P.O.                 x
RACKNOVICH, New York City Police Officer;                            x
JOHN DOES 1-10; New York City Police Officers,                       x
RICHARD ROES 1-10; New York City Police                              x
Supervisors, and/or Commanders; individually and in their           x
official capacities,                                                 x
                                                 x

                      Defendants                    x

------------------------------------------------------------------------- x

**COMPLAINT**

07 CIV 7495 (KMK) (JCF)



JURY TRIAL
DEMANDED

RECEIVED
AUG 2 4 2007
U.S.D.C. S.D. N.Y.
CASHIERS

BCF CASE

## **PRELIMINARY STATEMENT**

1.     This is a civil rights action in which the plaintiff, VALJEAN BROOKSHAW,

seeks relief for various constitutional violations, including, inter alia, false arrest, and, as to claims

for (1) excessively and unreasonably prolonged, unnecessary and punitive detention, (2) excessive,

unnecessary and punitive conditions of confinement that were shocking to the conscience and inflicted on plaintiff because of his exercise, or perceived exercise, of First Amendment protected speech activity and (3) subjection to indiscriminate mass arrests without an individualized determination of probable cause, for defendants' violation, under color of state law, of his rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution during the Republican National Convention in New York City in 2004 ("the RNC").

      2.    Defendants, THE CITY OF NEW YORK, a municipal entity; MICHAEL BLOOMBERG, Mayor of the City of New York; RAYMOND KELLY, New York City Police Commissioner; STEPHEN HAMMERMAN, Deputy Commissioner for Legal Matters; THOMAS DOEPFNER, Assistant Deputy Commissioner for Legal Matters; NYPD Special Counsel RUBY MARIN-JORDAN; New York City Police Department; JOSEPH ESPOSITO, Chief of Department, New York City Police Department; THOMAS GRAHAM; Commander, Disorders Control Unit, New York City Police Department; JOHN J. COLGAN, Assistant Chief and Commanding Officer, Pier 57; MICHAEL SCAGNELLI, Assistant Chief; NYPD Captain LORENZO JOHNSON; NYPD Inspector JAMES MCCARTHY TIMOTHY KRAFT, New York City Police Officer, Shield No. 11989; RACKNOVICH, New York City Police Officer; JOHN DOES 1-10, New York City Police Officers; and RICHARD ROES 1-10 New York City Police Supervisors, and/or Commanders; individually and in their official capacity acting individually, jointly and severally, implemented, enforced, encouraged, sanctioned and/or ratified policies, practices and/or customs to punish peaceful protest during the RNC by, inter alia, engaging in indiscriminate mass arrests which were unlawful and without probable cause, instituting a system of perjured sworn statements to attempt to justify those unlawful arrests, instituting a system of preventive detention to keep lawful peaceful

demonstrators off the streets during the height of the RNC, requiring that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of offense and the arrestees' possession of valid identification in violation of New York Criminal Procedure Law § 160.10, and subjecting those arrested to intolerable and cruel and inhumane conditions, including denying them access to family members and to legal counsel for an inordinate and unreasonable amount of time.

3.      In promulgating and implementing these policies, defendants clearly knew that during the relevant period many thousands of people from New York City and around the country would converge in New York City to demonstrate their opposition to the military, foreign and domestic policies of the current United States government and to the nominee for president from the Republican Party, George W. Bush. Although some chose to engage in acts of civil disobedience to express their opposition to these policies and to the President, the overwhelming majority of those arrested, including Plaintiff Valjean Brookshaw, either expressed such opposition within the law and in a manner that followed the instructions and directions of NYPD police officers, or merely happened to be in the vicinity of what the NYPD perceived to be protest activity.

4.      In addition to bringing the foregoing claims, plaintiff herein brings individual claims arising out of his individual arrests, including, without limitation, false arrest, false imprisonment, and excessive detention.

5.      Plaintiff seeks (i) a declaratory judgment that the policies, practices and/or customs described herein violate the First, Fourth, Fifth, Sixth and Fourteenth Amendments; (ii) permanent injunctive relief enjoining the defendants from continuing to implement the policies, practices and/or customs described herein, including the policy, custom and practice of suspicion-less and baseless indiscriminate mass arrests and delayed arrest processing as a means of crowd control and retaliation against individuals engaged, or perceived as engaging, in political protest in New York City. These

policies are a continuation of policies directed at political demonstrators, and previously identified in

prior litigation, *see Haus et al. v. City of New York, et al.,* 03 CV 4915 (RWS) and *Larsen, et al. v.

City of New York, et al.,* 04 Civ. 0665 (RWS); (iii) injunctive relief ordering the destruction of all

fingerprints, in whatever form existent, taken of plaintiff and all persons arrested during the RNC

whose top charge was a violation, including those fingerprints transmitted to and retained by the New

York State Division of Criminal Justice Services and the FBI; (iv) injunctive relief ordering the RNC

arrest record for the plaintiff to be expunged; (v) compensatory damages for the injuries caused by

defendants' unlawful conduct; (vi) punitive damages assessed against the individual defendants to

deter such intentional or reckless deviations from well-settled constitutional law; (vii) an award of

attorneys' fees and costs; and (viii) such other relief as this Court deems equitable and just. In bringing

these claims for injunctive relief, plaintiff alleges that he has been and will in the future be irreparably

harmed by the denial of and/or the threat of future violations of his rights to free speech and assembly.

## JURISDICTION

6.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4),

as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

7.      Plaintiff's claim for declaratory and injunctive relief are authorized by 28 U.S.C. §§

2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

## VENUE

8.      Venue is proper in the United States District Court for the Southern District of New

York pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving

rise to the claim occurred.

## JURY DEMAND

9.      Plaintiff demands a trial by jury in this action on each and every one of his claims.

## PARTIES

10.    Plaintiff VALJEAN BROOKSHAW, is a resident of New York.

11.    Defendant CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

12.    Defendant MICHAEL BLOOMBERG is and was, all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department ("NYPD") and is responsible, in whole and/or in part, for the creation implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is used in both his individual and official capacities.

13.    Defendant RAYMOND KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

14.    Defendant STEPHEN HAMMERMAN, is and was at all times relevant herein, the Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

15.    Defendant THOMAS DOEPFNER, is and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is

responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

16.    Defendant RUBY MARIN-JORDAN is, and was at all times relevant herein, Special Counsel to the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. She is sued individually and in her official capacity.

17.    Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

18.    Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

19.    Defendant JOHN J. COLGAN, is a Deputy Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

20.    Defendants Command and Supervisory officers MICHAEL SCAGNELLI, Chief, New York City Police Department; NYPD Inspector JAMES MCCARTHY; NYPD Captain LORENZO JOHNSON; and New York City Police Supervisors and Commanders RICHARD ROEs 1-50; New York City Police Officers JOHN DOEs 1-10 are NYPD Command and Police Officers

involved in the arrest of the plaintiff and all of the actions and conduct associated therewith, including, inter alia, the use of force, the preferring of charges, the approval of charges, the prosecution of the plaintiff, the abuse of criminal process, the cruel and inhumane conditions to which plaintiff was subjected, the excessive and unnecessary detention, and the implementation of the challenged policies and practices in question herein. They are sued individually and in their official capacities.

21. Defendants BLOOMBERG, KELLY, HAMMERMAN, DOEPFNER, MARIN-JORDAN ESPOSITO, GRAHAM, COLGAN, SCAGNELLI, JOHNSON, MCCARTHY, KRAFT, RACKNOVICH, DOES, and ROES are employees and/or agents of the City of New York. They include the individuals who directed and/or authorized the interference with, and/or prevention of, the plaintiff's expression of speech, protest, assembly and association, the use of unreasonable and excessive force, unreasonable arrest and detentions and/or who actually arrested the plaintiff, without probable cause, and who implemented the policies, practices and procedures to unreasonably detain the plaintiffs.

22. At all times relevant herein, defendants BLOOMBERG, KELLY, HAMMERMAN, DOEPFNER, MARIN-JORDAN, ESPOSITO, GRAHAM, COLGAN, SCAGNELLI,, JOHNSON, MCCARTHY, KRAFT, RACKNOVICH , DOES and ROES have acted under color of state law in the course and scope of their duties and functions as agents, employees, and officers of the City and/or the NYPD in engaging in the conduct described herein. At all times relevant herein, defendants have acted for and on behalf of the City and/or the NYPD with the power and authority vested in them as officers, agents and employees of the City and/or the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the City and/or the NYPD.

23. At all times relevant herein, each of the individual defendants acted under color of state law in the course and scope of his duties and functions as agent, employee, servant and/or officer of

the City and/or the NYPD in engaging in the conduct described herein. At all times relevant herein, the individual defendants have acted for and on behalf of the City and/or the NYPD with the power and authority vested in them as officers, agents and employees of the City and/or the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the City and/or the NYPD.

24.    At all times relevant herein, the individual defendants, have violated clearly established constitutional standards under the First, Fourth, Fifth, Sixth, and the Fourteenth Amendments of which a reasonable police officer and/or public official under their respective circumstances would have known.

## FACTS APPLICABLE TO ALL CLAIMS

25.    On August 27, 2004, the defendants, pursuant to an indiscriminate mass arrest policy, arrested numerous individuals who were participating, or perceived by the defendants as having participated in, a group bicycle ride at various points in Manhattan, including 35th Street between Tenth Avenue and Dyer, 7th Avenue between 34th Street and 35th Street, and Second Avenue between 9th Street and 10th Street. On that date, the defendants indiscriminately arrested anyone seen riding a bicycle or standing with a bicycle for allegedly having participated in a bike event known as "Critical Mass," regardless of whether any police officer had personally observed the arrestee engaging in any unlawful conduct and even though "Critical Mass" bike events had been ongoing and sanctioned by the defendants on a monthly basis for years prior to the RNC. To effectuate these unlawful arrests, the defendants used orange nets and lines of police officers on foot or with scooters to trap and arrest scores of people with bicycles without warning. Plaintiff VALJEAN BROOKSHAW was arrested by defendant RACKNOVICH and JOHN DOE and/or RICHARD ROE defendants on August 27, 2004, at or around 9:45 p.m. while standing in a group at 10th Street and 2nd Avenue in Manhattan.

He was no longer riding nor was he standing with his bicycle.

26.    Defendants Chief JOSEPH ESPOSITO, Chief MICHAEL SCAGNELLI, Inspector JAMES MCCARTHY and Captain LORENZO JOHNSON were involved in the decision to arrest and/or helped effectuate arrests at this location. At no time was plaintiff or the others arrested in his vicinity given an order and/or meaningful opportunity to disperse or were advised that they were in violation of any law or ordinance of the State or City of New York.

27.    At no time did BROOKSHAW violate any law, regulation, or ordinance, or any order of a police officer.

28.    Plaintiff was detained at Pier 57 before he was taken to Central Booking for arraignment before a judge.

29.    Defendant TIMOTHY KRAFT was later assigned as BROOKSHAW's arresting officer.

30.    Plaintiff was transported to Pier 57, where he was held in filthy and inhumane conditions for many hours.

31.    Plaintiff was eventually transported to 100 Centre Street where he was detained until his arraignment, which occurred on August 29, 2004, at approximately 3:30AM.

32.    Overall, plaintiff was held in custody for approximately 30 hours.

33.    At his arraignment, plaintiff was arraigned and charged with one count of disorderly conduct. This charge was false and falsely sworn to by defendant TIMOTHY KRAFT.

34.    The individual defendants' acts and omissions above were intentional, wanton, willful and malicious, and were performed with deliberate indifference and/or in reckless disregard of BROOKSHAW's constitutional rights, entitling plaintiff to punitive damages.

35.    Each of the actions complained of herein was part of and pursuant to a policy, custom,

and/or practice of the City and/or the NYPD of stifling protest during the RNC by engaging in indiscriminate mass arrest of demonstrators, those perceived to be demonstrators, and those merely in the vicinity of demonstrators, without individualized suspicion or probable cause.

36.    The mass arrest policy utilized by the defendants just before and during the RNC substantially chills the exercise of First Amendment rights. When the police arrest large numbers of people engaged in lawful activity at or near demonstrations, those arrested are far less likely to be comfortable engaging in future protest activity. Moreover, when such arrests take place at such a highly publicized event as the RNC, the public at large is given the message that participation in protest activity is criminal and likely to lead to arrest. This "criminalization" of dissent and protest lies at the heart of the defendants' mass arrest policy and the other policies alleged herein.

37.    Each of the actions complained of herein was part of and pursuant to a policy, custom, and/or practice of the City and/or NYPD of stifling protest during the RNC by failing to properly screen, train, supervise, discipline and /or monitor police officers with respect to the rights of demonstrators, those perceived to be demonstrators, and those merely in the vicinity of demonstrators.

38.    The filthy, unhealthy, and dangerous conditions at Pier 57, and the excessive length of time plaintiff was held in custody, *inter alia*, were part of and pursuant to a policy, custom, and/or practice of the NYPD and/or the City of stifling protest during the RNC by failing to properly screen, train, supervise, discipline and /or monitor police officers with respect to the rights of demonstrators, those perceived to be demonstrators, and those merely in the vicinity of demonstrators, and/or by encouraging, ratifying, sanctioning, and/or acting with deliberate indifference toward threats to the health, safety, and rights of such individuals.

39.    Upon arrival at Pier, 57, plaintiff and other RNC arrestees were searched, his property, including his cell phone, was confiscated and placed in a large pile (which the officers later had to

spend considerable time sorting through to find their arrestees' belongings in order to voucher them), and he was placed in one of the holding cells. BROOKSHAW was held for many hours at Pier 57, in a cage that lacked adequate benches or other means whereby to adequately sit, rest and/or sleep. Plaintiff and other RNC arrestees were held under conditions which were cold, loud, bright (even over night) and uncomfortable, including the continuous use of large fans running at top speeds, which, given the presence of numerous noxious and, on information and belief, toxic, chemicals present at Pier 57, was particularly inappropriate.

40.    According to published reports, three environmental inspections of Pier 57 in 2001 and the first half of 2004 uncovered safety and health hazards including easily disturbed asbestos particles, lack of adequate fire protection systems, and floors covered with black oily soot. On information and belief, the floors of the cages in Pier 57 were covered with numerous highly toxic chemicals and substances, including, on information and belief, those known to be carcinogenic, mutagenic, teratogenic, hepatogenic, and immunotoxic, and to cause other diseases, including but not limited to friable asbestos, aromatic hydrocarbons and xeno hormones. The dangers and risks from the asbestos and other toxins were exacerbated by the use of the fans referenced above.

41.    Located on the west side of Manhattan, Pier 57 had been used up until September 7, 2003 by the Metropolitan Transit Authority ("MTA") as a storage and repair facility for City buses, after which time it sat empty and unused until the RNC. An environmental report prepared by Ove Arup & Partners Consulting Engineers PC in April of 2004 stated that Pier 57's "electrical and life safety systems have code deficiencies, are in poor physical conditions and in need of replacement," "key components of the existing plumbing and fire protection systems have code deficiencies and/or are in poor physical condition and are in need of replacement," and "there was oily waste visible throughout the street level of the facility."

42.    Not until July 28, 2004, one month before the RNC, did defendants BLOOMBERG,

KELLY and CITY OF NEW YORK and others enter into an agreement with the Hudson River Park

Trust, the entity that had purchased Pier 57 from the MTA, to use this filthy, hazardous and dangerous

setting as a detention facility, knowing that it would be unfit for human occupancy by the time of the

RNC.

43.    Defendants began preparing Pier 57 for use as a human detention facility only

approximately one week before the RNC and on information and belief, defendants never obtained a

certificate of occupancy for Pier 57. The defendants constructed multiple holding cells inside Pier 57

using chain-link fence topped with razor wire. Each cell had two sections, one in which arrestees were

kept, and another, buffer zone, which contained a portable toilet and water cooler.

44.    Further, Pier 57 was not equipped with any phones from which plaintiff and other RNC

arrestees could call their families, friends or employers to notify them that they had been arrested.

Arrestees' cell phones had been confiscated when they first entered the Pier. This meant that plaintiff

was denied access to a telephone until sometime after he reached 125 White Street (the Mass Arrest

Processing Center ("MAPC")).

45.    The restroom and sanitary facilities at Pier 57 were grossly inadequate. The restrooms

for arrestees consisted of port-o-johns, often one for a hundred or more detainees. Arrestees had no

way to wash their hands after using the restroom or after touching the soot and oil covered floors,

which, as explained above, was frequently the only place to sit during the hours they were held at the

Pier. This meant that arrestees who wished to eat the little food that was provided at Pier 57 were

therefore forced to touch their food with soiled and dirty hands before ingesting it.

46.    While at Pier 57, and later at 125 White Street/MAPC, plaintiff was denied access to

an attorney.

47.     Plaintiff was subjected to excessive and unnecessary handcuffing with plastic flexcuffs.

48.     During the RNC, defendants CITY OF NEW YORK, BLOOMBERG, KELLY, and ROEs 1-10 implemented a policy, practice or custom of detaining the plaintiff and other RNC arrestees, without justification, for unnecessary and prolonged periods of time, thereby preventing them from participating in further demonstration or protest activity, or from simply going on with their lives. In particular, the defendants implemented arrest procedures which were intended to and did in fact unreasonably prolong and extend the period of time that plaintiff and other RNC arrestees were held in custody following their arrests. These included, *inter alia*, the adoption of a "no summons" policy under which everyone arrested in connection with an RNC protest event, no matter how minor the infraction, would be subject to a custodial arrest, rather than being issued a summons on the street; the use of Pier 57 as the Post Arrest Staging Site ("PASS") without fingerprinting or LiveScan capability; the detailed listing of the possessions of all those arrested, with everything being itemized, line by line (which first required the arresting/assigned offices to cull through large piles of arrestees' belongings to locate their arrestees' property); having counsel from the NYPD's Legal Bureau review each arrest and assist in the preparation of the on-line booking worksheet before the paperwork was sent to the Office of the District Attorney; repeatedly moving the arrestees from cage to cage at Pier 57, then from Pier 57 to Central Booking, and finally from cell to cell within Central Booking; the fingerprinting of all those arrested, even for minor offenses for which fingerprinting is unnecessary; and requiring that the results of a criminal background check from both New York State Division of Criminal Justice Services ("DCJS") and the Federal Bureau of Investigation ("FBI")was received by the Manhattan Court Section before plaintiff and other RNC arrestees could be arraigned. All these procedures were intended to, and did, unnecessarily and unreasonably extend and prolong the period

13

of time that plaintiffs, and those similarly situated, were held in custody.

49.    Moreover, plaintiff and the overwhelming majority of the 1,800 people who were arrested during the period just before and during the RNC were detained for only violations, such as disorderly conduct and parading without a permit, which, under New York Criminal Procedure Law § 160.10, did not require the taking of their fingerprints prior to their release with a summons or a Desk Appearance Ticket. The defendants' decision not to issue any summons and to fingerprint all persons arrested in connection with an RNC protest event, including those arrested for only violations, resulted in excessive delays in plaintiff's release and the improper entry of his fingerprints into City, state and federal government databases.

50.    The unconstitutional arrests of large numbers of individuals who were not in violation of any laws or regulations of the State or City of New York, were designed to create a pretext for the lengthy and punitive detentions of people arrested

51.    Review by NYPD Legal Bureau and Criminal Justice Bureau ("CJB") personnel of arresting/assigned officers' paperwork before it was shown to the District Attorneys' office for the purpose of insuring that the paperwork was facially sufficient despite the attesting officers' lack of personal knowledge was part of and pursuant to a policy, custom, and/or practice of the NYPD and/or the City of stifling protest during the RNC.

52.    Said policies, customs and/or practices were created, designed, implemented, enforced and/or ratified on behalf of the CITY OF NEW YORK and the NYPD by defendants KELLY and BLOOMBERG.

53.    As a direct and proximate result of the foregoing actions, including defendants' wrongful polices, practices, customs and/or usages complained of herein, BROOKSHAW has suffered

physical injury, pain, and suffering, mental anguish, embarrassment, humiliation, and emotional distress, deprivation of liberty, and other expenses.

## FIRST CAUSE OF ACTION
## DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

54.     Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

55.     The actions and conduct and the policies, practices and customs of the defendants in subjecting BROOKSHAW to false arrest, excessive and unreasonable force, including excessive and unreasonable handcuffing, and excessive and unreasonable seizure, excessive detention, cruel and inhumane conditions of detention, denial of medical care, and denial of access to counsel, violated the plaintiff's constitutional and civil rights as guaranteed under the Civil Rights Act of 1871, 42 U.S.C. §1983, and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

56.     As a direct and proximate result of the misconduct and abuse of authority described above, plaintiff has suffered and will continue to suffer injury and damages including, inter alia, deprivation of liberty, physical and mental pain, suffering and mental anguish.

## SECOND CAUSE OF ACTION
## MUNICIPAL LIABILITY - 42 U.S.C. § 1983 - FIRST AMENDMENT

57.     Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

58.     By implementing, enforcing, encouraging, sanctioning and/or ratifying policies, practices and/or customs to punish peaceful protest during the RNC by, inter alia, engaging in

15

indiscriminate mass arrests which were unlawful and without probable cause, instituting a system

of perjured sworn statements to attempt to justify those unlawful arrests, instituting a system of

preventive detention to keep lawful peaceful demonstrators off the streets during the height of the

RNC, requiring that all persons arrested in connection with the RNC be fingerprinted

notwithstanding the level of offense and the arrestees' possession of valid identification in violation

of New York Criminal Procedure Law § 160.10, and subjecting those arrested to intolerable and

cruel and inhumane conditions, the defendants, acting under pretense and color of state law and in

their individual and official capacities and within the scope of their employment have deprived and

will continue to deprive BROOKSHAW of rights, remedies, privileges and immunities guaranteed

to every citizen of the United States, in violation of rights guaranteed by the First Amendment of the

United States Constitution, as incorporated against municipal actors under the Fourteenth

Amendment, and 42 U.S.C. § 1983.

59.    As a direct and proximate result of the misconduct and abuse of authority described

above, plaintiff has suffered and will continue to suffer injury and damages including, inter alia,

deprivation of liberty, physical and mental pain, suffering and mental anguish.

### THIRD CAUSE OF ACTION
### MUNICIPAL LIABILITY - 42 U.S.C. § 1983 - FOURTH AMENDMENT

60.    Plaintiff realleges and incorporates by reference each and every allegation above as

if fully set forth herein.

61.    By implementing, enforcing, encouraging, sanctioning and/or ratifying policies,

practices and/or customs to punish peaceful protest during the RNC by, inter alia, engaging in

indiscriminate mass arrests which were unlawful and without probable cause, instituting a system

of perjured sworn statements to attempt to justify those unlawful arrests, instituting a system of preventive detention to keep lawful peaceful demonstrators off the streets during the height of the RNC, requiring that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of offense and the arrestees' possession of valid identification in violation of New York Criminal Procedure Law § 160.10, and subjecting those arrested to intolerable and cruel and inhumane conditions, the defendants, acting under pretense and color of state law and in their individual and official capacities and within the scope of their employment have deprived and will continue to deprive plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights guaranteed by the Fourth Amendment of the United States Constitution,, and 42 U.S.C. §1983.

62.    As a direct and proximate result of the misconduct and abuse of authority described above, BROOKSHAW has suffered and will continue to suffer injury and damages including, inter alia, deprivation of liberty, physical and mental pain, suffering and mental anguish.

63.    If the defendants' policies, practices and/or customs to punish mostly peaceful protest are not enjoined, plaintiff will be subjected to immediate and irreparable injury for which no adequate remedy at law exists in that plaintiff will suffer continued violations of their rights under the Fourth Amendment to the United States Constitution.

### FOURTH CAUSE OF ACTION
### MUNICIPAL LIABILITY - 42 U.S.C. § 1983 - FIFTH & SIXTH AMENDMENT

64.    The plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

65.    By implementing, enforcing, encouraging, sanctioning and/or ratifying policies,

17

practices and/or customs to punish peaceful protest during the RNC by, inter alia, engaging in indiscriminate mass arrests which were unlawful and without probable cause, instituting a system of perjured sworn statements to attempt to justify those unlawful arrests, instituting a system of preventive detention to keep lawful peaceful demonstrators off the streets during the height of the RNC, requiring that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of offense and the arrestees' possession of valid identification in violation of New York Criminal Procedure Law § 160.10, and subjecting those arrested to intolerable and cruel and inhumane conditions, the defendants, acting under pretense and color of state law and in their individual and official capacities and within the scope of their employment and have deprived and will continue to deprive plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights guaranteed by the Fifth and Sixth Amendments of the United States Constitution, as incorporated against municipal actors under the Fourteenth Amendment, and 42 U.S.C. §1983.

66.    As a direct and proximate result of the misconduct and abuse of authority described above, BROOKSHAW has suffered and will continue to suffer injury and damages including, inter alia, physical and mental pain, suffering and mental anguish.

### FIFTH CAUSE OF ACTION
### MUNICIPAL LIABILITY - 42 U.S.C. § 1983 - FOURTEENTH AMENDMENT

67.    Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

68.    By implementing, enforcing, encouraging, sanctioning and/or ratifying policies, practices and/or customs to punish peaceful protest during the RNC by, inter alia, engaging in

18

indiscriminate mass arrests which were unlawful and without probable cause, instituting a system

of perjured sworn statements to attempt to justify those unlawful arrests, instituting a system of

preventive detention to keep lawful peaceful demonstrators off the streets during the height of the

RNC, requiring that all persons arrested in connection with the RNC be fingerprinted

notwithstanding the level of offense and the arrestees' possession of valid identification in violation

of New York Criminal Procedure Law § 160.10, and subjecting those arrested to intolerable and

cruel and inhumane conditions, the defendants, acting under pretense and color of state law and in

their individual and official capacities and within the scope of their employment and have deprived

and will continue to deprive plaintiff of rights, remedies, privileges and immunities guaranteed to

every citizen of the United States, in violation of rights guaranteed by the Fourteenth Amendment

to the United States Constitution and 42 U.S.C. §1983.

69.     As a direct and proximate result of the misconduct and abuse of authority described

above, plaintiff has suffered and will continue to suffer injury and damages including, inter alia,

deprivation of liberty, physical and mental  pain, suffering and mental anguish.

## SIXTH CAUSE OF ACTION
## MUNICIPAL LIABILITY – DISCRIMINATORY ENFORCEMENT OF
## UNCONSTITUTIONAL NEW YORK STATE PENAL LAW § 240.20

70.     The plaintiff realleges and incorporates by reference each and every allegation

above as if fully set forth herein.

71.     New York State Penal Law § 240.20 states in relevant part that "[a] person is

guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or

alarm, or recklessly creating a risk thereof . . . 5. He obstructs vehicular or pedestrian traffic; or 6.

He congregates with other persons in a public place and refuses to comply with a lawful order of

the police to disperse." Disorderly conduct is a violation.

72.    During the RNC, the NYPD engaged in a policy, practice and/or custom of enforcing New York State Penal Law §§ 240.20[5] & [6] against people arrested at or in the vicinity of RNC-related protest events. During the relevant period at least 548 RNC-related arrestees, including plaintiff, were arrested for and charged with disorderly conduct.

73.    During the relevant period, the NYPD interpreted and applied sub-sections 240.20[5] & [6] in a discriminatory and unequal fashion against those arrested at or in the vicinity of RNC-related protest events.

74.    By adopting, maintaining and implementing the policy, practice and/or custom of enforcing this law in a discriminatory manner, defendant City of New York deprived and will continue to deprive plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution, as incorporated against municipal actors under the Fourteenth Amendment, and 42 U.S.C. § 1983.

75.    As a direct and proximate result of the misconduct and abuse of authority described above, plaintiff has suffered and will continue to suffer injury and damages including, *inter alia*, deprivation of liberty, physical and mental pain, suffering and mental anguish.

### SEVENTH CAUSE OF ACTION
### SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1981 AND 1983

76.    The plaintiff realleges and incorporate by reference each and every allegation above as if fully set forth herein.

77.    Defendants BLOOMBERG, KELLY, HAMMERMAN, DOEPFNER, MARIN-

JORDAN, ESPOSITO, GRAHAM, COLGAN, SCAGNELLI,, JOHNSON, MCCARTHY,  and

ROES acting under pretence and color of state law and in their individual and official capacities

and within the scope of their employment, failed to remedy the wrongs committed by employees

of defendant CITY OF NEW YORK under their supervision, and failed to properly train,

supervise or discipline employees of the CITY OF NEW YORK under their supervision,

including, inter alia, with respect to indiscriminate mass arrests which were unlawful and without

probable cause, the creation of perjured sworn statements to attempt to justify those unlawful

arrests, preventive detention to keep lawful peaceful demonstrators off the streets during the

height of the RNC, fingerprinting all persons arrested in connection with the RNC

notwithstanding the level of offense and the arrestees possession of valid identification in

violation of New York Criminal Procedure Law § 160.10, and subjecting those arrested to

intolerable and cruel and inhumane conditions, thereby depriving plaintiff of rights, remedies,

privileges and immunities guaranteed to every citizen of the United States, in violation of the

First, Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution, and 42

U.S.C. § 1983.

78.    As a direct and proximate result of the misconduct and abuse of authority

described above, plaintiff has suffered and will continue to suffer injury and damages including,

*inter alia*, deprivation of liberty, physical and mental pain, suffering and mental anguish.

**WHEREFORE**, plaintiff demands the following relief jointly and severally

against all defendants:

A.    a declaration that defendants violated the federal rights of plaintiff;.

B.    a declaration that defendants' policies, practices and/or customs to punish

21

peaceful protest during the RNC by, inter alia, engaging in indiscriminate mass arrests which were unlawful and without probable cause, instituting a system of perjured sworn statements to attempt to justify those unlawful arrests, instituting a system of preventive detention to keep lawful peaceful demonstrators off the streets during the height of the RNC, requiring that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of offense and the arrestees' possession of valid identification and subjecting those arrested to intolerable and cruel and inhumane conditions, are unconstitutional;

C.      an order requiring the destruction of fingerprints, in whatever form existent, taken of plaintiff, including those fingerprints transmitted to and retained by the New York State Division of Criminal Justice Services, the FBI and any other law enforcement agency;

D.      an order requiring the RNC arrest record for plaintiff be expunged;

E.      compensatory damages for physical, emotional, and economic injuries suffered by plaintiff by reason of defendants' unlawful and unjustified conduct, in an amount to be determined at trial;

F.      punitive damages against the individual defendants to the extent allowable by law;

G.      attorneys fees;

H.      the costs and disbursements of this action; and

I..      such other and further relief as appears just and proper.

22

Dated:    New York, New York
          August 24, 2007

Respectfully submitted,

JONATHAN C. MOORE (JM 6902)
RACHEL KLEINMAN (RK 2141)

**Beldock Levine & Hoffman LLP**
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 490-0400
*Attorneys for the Plaintiff*